## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| TRACY HORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-1174 (LMB/TCB) |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g), Tracy Horton ("Plaintiff") seeks judicial review of the final decision of Nancy A. Berryhill ("Defendant"), the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. On January 16, 2018, the certified Administrative Record ("R.") was filed under seal, pursuant to Local Civil Rules 5(B) and 7(C)(1). By March 9, 2018, both parties filed motions for summary judgment with briefs in support, which are now ripe for resolution.[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned U.S. Magistrate Judge recommends, for the following reasons, that Plaintiff's Motion for Summary Judgment (Dkt. 10) be GRANTED IN PART and Defendant's Motion for Summary Judgment (Dkt. 13) be DENIED.

---

1. The motions and briefs in this case include Plaintiff's Motion for Summary Judgment (Dkt. 10) ("Pl.'s Mot. Summ. J."), the Memorandum in Support of Plaintiff's Motion for Summary Judgment (Dkt. 11) ("Pl.'s Mem. Supp."), Defendant's Motion for Summary Judgment (Dkt. 13) ("Def.'s Mot. Summ. J."), the Memorandum of Law in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment (Dkts. 14 & 15) ("Def.'s Mem. Supp. & Opp'n"), and Plaintiff's to Opposition to Defendant's Motion for Summary Judgment and Reply to Plaintiff's Motion for Summary Judgment (Dkts. 17 & 18) ("Pl.'s Mem. Opp. & Reply").

I. <u>PROCEDURAL BACKGROUND</u>

Plaintiff filed the presently disputed applications for SSI and DIB on July 1, 2013, alleging disability resulting from a herniated disc, degenerative disc disease, a back injury, arthritis, endometriosis, cervicalgia, depression, post-traumatic stress disorder, seasonal effective disorder, a knee injury to the left knee, an injury to the left pinky finger, and blurred vision, with an alleged onset date ("AOD") of June 30, 2012. (R. at 359-62, 370-73, 417-30.) Plaintiff's claims were first denied on February 6, 2014, then again on reconsideration on July 17, 2014. (<u>Id.</u> at 204-33, 236-71, 291-95.) On August 8, 2014, Plaintiff filed a request for a hearing in front of an administrative law judge ("ALJ"). (<u>Id.</u> at 297-98.) The hearing was held in front of ALJ Francine L. Applewhite on July 20, 2016, for which Plaintiff was not present, but Plaintiff's counsel still presented argument and vocational expert ("VE") Dr. James Michael Ryan provided testimony. (<u>Id.</u> at 195-203.) The ALJ issued her decision denying Plaintiff's claims on August 25, 2016. (<u>Id.</u> at 164-78.) On October 21, 2016, Plaintiff requested review of the ALJ's decision to the Appeals Council for the Office of Disability and Adjudication and Review ("Appeals Council"). (<u>Id.</u> at 354.) The Appeals Council denied Plaintiff's request for review on August 17, 2017, making the ALJ's decision the final decision of Defendant. (<u>Id.</u> at 1-6.) Plaintiff filed her Complaint (Dkt. 1) for judicial review of Defendant's decision on October 18, 2017. Defendant filed her timely Answer (Dkt. 7) on January 16, 2018. By March 9, 2018, Plaintiff filed her Motion for Summary Judgment (Dkt. 10) and Defendant filed her Motion for Summary Judgment (Dkt. 13). The matter is now ripe for review.

II. <u>STANDARD OF REVIEW</u>

Under the Social Security Act, the Court's review of Defendant's final decision is limited to determining whether the ALJ's decision was supported by substantial evidence in the record

and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. §

405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a

preponderance. Hays, 907 F.2d at 1456. While the standard is deferential, where the ALJ's

determination is not supported by substantial evidence on the record, or where the ALJ has made

an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514,

517 (4th Cir. 1987).

In reviewing for substantial evidence, the Court must examine the record as a whole, but

it may not "undertake to re- weigh the conflicting evidence, make credibility determinations, or

substitute [its] judgment for that of the Secretary." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.

2001) (citing Craig v. Chater, 76 F.3d at 589 (4th Cir. 1996)). The correct law to be applied

includes the Social Security Act, its implementing regulations, and controlling case law. See

Coffman, 829 F.2d at 517-18. Moreover, relevant law charges Defendant with evaluating the

medical evidence and assessing symptoms, signs, and medical findings to determine the

functional capacity of a claimant, not the reviewing district court. See Hays, 907 F.2d at 1456-

57. With this standard in mind, the Court evaluates the ALJ's findings and decision.

### III. THE ALJ'S DECISION

An ALJ is required to employ a five-step sequential evaluation in every Social Security

disability claim analysis to determine a claimant's eligibility. The Court examines this five-step

process on appeal to determine whether the correct legal standards were applied in this case, and

whether Defendant's resulting decision is supported by substantial evidence in the record. 20

C.F.R. §§ 404.1520, 416.920. In accordance with the five-step sequential analysis, the ALJ made

the following findings of fact and conclusions of law.

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 30, 2012. (R. at 169.) At step two of the sequential evaluation, the ALJ found that Plaintiff had various severe and non-severe medically determinable impairments. (Id. at 169-70.) The ALJ found Plaintiff's degenerative disc disease of the cervical and lumbar spine, arthritis, and cervicalgia to be severe medically determinable physical impairments. (Id.) The ALJ found Plaintiff's alleged endometriosis, blurry vision, and repeated headaches to be non-severe medically determinable physical impairments. (Id. at 170.) The ALJ found Plaintiff's alleged carpal tunnel syndrome to not be a medically determinable impairment at all. (Id.) The ALJ found Plaintiff's depression, seasonal affective disorder, and posttraumatic stress disorder to be non-severe medically determinable mental impairments. (Id. at 170-71.) At step three of the sequential evaluation, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 172.) In between steps three and four of the sequential evaluation, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff could occasionally climb ladders, ropes, or scaffolds, frequently climb of stairs or ramps, frequently stoop, crouch, or kneel, occasionally crawl, and occasionally be exposed to hazards such as unprotected heights. (Id. at 172.) At step four of the sequential evaluation, the ALJ found that Plaintiff had no past relevant work. (Id. at 176.) At step five of the sequential evaluation, the ALJ found that Plaintiff was able to perform jobs that existed in significant numbers in the national economy. (Id. at 176-77.) Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined by the Social Security Act, from June 30, 2012, to

4

the date of the ALJ's decision. (Id. at 177.)

## IV. ANALYSIS

Plaintiff raises four issues on appeal in supporting its contention that Defendant's final decision fails to be supported by substantial evidence and is erroneous as a matter of law. First, Plaintiff argues that the ALJ erroneously assessed Plaintiff's RFC by not evaluating all pertinent evidence related to Plaintiff's ability to do work-related activities. (Pl.'s Mem. Supp. at 6-7; Pl.'s Mem. Opp. & Reply at 4-5.) Second, Plaintiff argues that the ALJ also erroneously assessed the Plaintiff's RFC by failing to properly evaluate the opinions of Plaintiff's treating physician Dr. William Carter. (Pl.'s Mem. Supp. at 7-13; Pl.'s Mem. Opp. & Reply at 2-4.) Third, Plaintiff argues that the Appeals Council erroneously failed to consider new evidence presented by Plaintiff during the pendency of her appeal of the ALJ's decision. (Pl.'s Mem. Supp. at 13-15; Pl.'s Mem. Opp. & Reply at 5-6.) Fourth, Plaintiff argues that the ALJ deprived Plaintiff of due process of law. (Pl.'s Mem. Supp. at 15-17; Pl.'s Mem. Opp. & Reply at 6-7.) Each issue is considered by the undersigned in turn.

### A. The Evaluation of Evidence Related to Plaintiff's Ability to Do Work-Related Activities

Plaintiff argues that the ALJ erroneously assessed Plaintiff's RFC by not evaluating all pertinent evidence related to Plaintiff's ability to do work-related activities. (Pl.'s Mem. Supp. at 6-7; Pl.'s Mem. Opp. & Reply at 4-5.) Specifically, Plaintiff states that the ALJ failed to evaluate evidence of Plaintiff's upper extremity impairments, including carpal tunnel syndrome and cervical radiculopathy, which spoke to Plaintiff's abilities to reach, handle, finger, or feel objects. (Pl.'s Mem. Supp. at 6-7.) In response, Defendant argues that the ALJ addressed all functional limitations and the RFC was supported by substantial evidence. (Def.'s Mem. Supp. & Opp'n at 22-23.)

5

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1), 416.902(e)-(f), 416.945(a)(1). RFC is generally defined as the most that an individual is able to do despite limitations caused by his or her impairments. Id. §§ 404.1545(a)(1), 416.945(a)(1). In analyzing a claimant's abilities, the ALJ must assess the nature and extent of the claimant's physical abilities, mental abilities, and other abilities affected by impairments and then determine the claimant's RFC for work activity on a regular and continuing basis. Id. §§ 404.1545(b)-(d), 416.945(b)-(d); S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). This includes limitations from both severe and non-severe impairments, so long as they are medically determinable impairments. 20 C.F.R. §§ 404.1545(e), 416.945(e); S.S.R. 96-8p, 1996 WL 374184, at *5. In the RFC assessment, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." S.S.R. 96-8p, 1996 WL 374184, at *7. In making the RFC assessment, an ALJ is required to consider all relevant medical evidence and other evidence in the case record. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

At issue in this case is the ALJ's alleged lack of consideration of evidence of Plaintiff's carpal tunnel syndrome and cervical radiculopathy that addressed Plaintiff's upper extremities and her abilities to reach, handle, finger, or feel objects. The undersigned considers evidence of Plaintiff's carpal tunnel syndrome and Plaintiff's cervical radiculopathy in turn.

### 1. Evidence of Carpal Tunnel Syndrome

Plaintiff only briefly mentions that the ALJ failed to properly evaluate evidence of Plaintiff's carpal tunnel syndrome, and Plaintiff points to no specific evidence that the ALJ failed

to consider or inappropriately considered. (Pl.'s Mem. Supp. at 7.) Plaintiff seems to take issue with the fact that the ALJ did not consider Plaintiff's carpal tunnel syndrome when evaluating Plaintiff's RFC. Plaintiff is correct that the ALJ did not consider evidence of Plaintiff's carpal tunnel syndrome when assessing Plaintiff's RFC. Instead, the ALJ examined evidence of Plaintiff's carpal tunnel syndrome at step two of the sequential analysis when determining whether Plaintiff had a medically determinable impairment that was severe or a combination of impairments that was severe. (R. at 170.) The ALJ acknowledged that Plaintiff was diagnosed with carpal tunnel syndrome. (Id.) However, the ALJ also noted that no objective testing was performed that confirmed carpal tunnel syndrome, and therefore, Plaintiff's carpal tunnel syndrome was not a medically determinable impairment. (Id.)

The ALJ did not err by not addressing Plaintiff's carpal tunnel syndrome in the RFC assessment. As previously stated, an RFC assessment must include limitations from both severe and non-severe impairments, but only if they are from medically determinable impairments. 20 C.F.R. §§ 404.1545(e), 416.945(e); S.S.R. 96-8p, 1996 WL 374184, at *5. Medically determinable impairments must be established by objective medical abnormalities such as medical signs and laboratory findings. S.S.R. 96-4p, 1996 WL 374187, at *1 (July 2, 1996). The ALJ's determination that Plaintiff's carpal tunnel syndrome was not a medically determinable impairment meant that the ALJ was not to consider the carpal tunnel syndrome in assessing Plaintiff's RFC.

The ALJ's determination that Plaintiff's carpal tunnel syndrome was not a medically determinable impairment was supported by substantial evidence in the record. The evidence of Plaintiff's carpal tunnel syndrome is scant. Plaintiff was first diagnosed with carpal tunnel syndrome on July 25, 2013. (R. at 952, 966, 1109.) The diagnosis was given as the result of a

7

neurological exam that produced no objective findings or results. (Id. at 966, 1109.) Plaintiff's

diagnosis carpal tunnel syndrome was then reiterated on three later occasions: August 20, 2013;

April 9, 2014; and February 20, 2015. (Id. at 949, 969, 1099, 1108, 1305.) Neither the initial

diagnosis nor subsequent affirmations involved objective testing. As such, the ALJ appropriately

concluded that Plaintiff's carpal tunnel could not be deemed a medically determinable

impairment, and the ALJ appropriately did not consider it during the RFC assessment in

determining Plaintiff's abilities to reach, handle, finger, or feel objects.

### 2. Evidence of Cervical Radiculopathy

Plaintiff also asserts that the ALJ failed to properly evaluate evidence of Plaintiff's

cervical radiculopathy in two ways. (Pl.'s Mem. Supp. at 6-7; Pl.'s Mem. Opp & Reply at 4-5.)

First, Plaintiff states that the ALJ failed to properly evaluate the results of an EMG nerve study

Plaintiff underwent on September 24, 2013. (Pl.'s Mem. Supp. at 6; Pl.'s Mem. Opp & Reply at

4.) Second, Plaintiff states that the ALJ failed to properly evaluate the results of a CT scan that

Plaintiff underwent on June 27, 2012. (Pl.'s Mem. Supp. at 6.)

The ALJ initially considered Plaintiff's cervical radiculopathy at step two of the

sequential analysis, and the ALJ determined that Plaintiff's cervical radiculopathy was not a

severe impairment. (R. at 170.) Because the ALJ determined that Plaintiff's cervical

radiculopathy was not a severe impairment, as opposed to not a medically determinable

impairment, the ALJ was required to consider evidence of Plaintiff's cervical radiculopathy

during the RFC assessment. See 20 C.F.R. §§ 404.1545(e), 416.945(e); S.S.R. 96-8p, 1996 WL

374184, at *5. The ALJ did generally examine evidence of Plaintiff's cervical radiculopathy

during the RFC assessment while evaluating Plaintiff's allegedly disabling symptoms of back

pain. (R. at 173.)

8

With regards to the EMG nerve study on September 24, 2013, the ALJ did not improperly evaluate the results of the EMG nerve study. The ALJ explicitly considered the EMG nerve study results and noted that they revealed C6 and C7 radiculopathy and possible C6 radiculopathy. (Id.) Despite this, upon comparing the EMG nerve study results to other diagnostic imaging, the ALJ came to the conclusion that the EMG nerve study was part of Plaintiff's diagnostic imaging that "has remained generally stable with minimal worsening of the cervical and lumbar deficits from July 2012 to April 2016." (Id. at 176.) Plaintiff takes issue with the fact that the ALJ did not include any limitation related to the findings of the EMG nerve study. (Pl.'s Mem. Supp. at 6-7; Pl.'s Mem. Opp. & Reply at 4.) However, review of the EMG nerve study results reveals only a note of abnormality alongside revealing radiculopathy, with no statements of any actual limitations in the study results themselves. (R. at 985.) In analyzing a claimant's abilities, the ALJ must assess the nature and extent of the claimant's abilities affected by impairments to determine the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. §§ 404.1545(b)-(d), 416.945(b)-(d); S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). For physical abilities, such functional limitations include activities "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stopping or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Because the EMG nerve study results contain no statements of physical functional limitations, the ALJ did not err in her consideration of the EMG nerve study results.

With regards to the CT scan from June 27, 2012, the ALJ did not appear to explicitly consider the results of the CT scan. (R. at 173.) The CT scan results state that Plaintiff had a suspected large disc herniation at the C6-C7 level with caudal extrusion component resulting in

9

canal narrowing and likely encroachment on the C7 and nerve roots. (Id. at 804-07.) Like the

EMG nerve test results, Plaintiff takes issue with the fact that the ALJ did not include any

limitation related to the findings of CT scan. (Pl.'s Mem. Supp. at 6-7.) However, also like the

EMG nerve test results, the CT scan results do not address any physical functional limitations

that would need to be considered for Plaintiff's RFC. While the ALJ should have considered the

CT scan results in light of the ALJ's requirement to consider all relevant medical evidence,  the

ALJ's failure to consider the CT scan results amounts to harmless error. An error by an ALJ "is

reviewed under the harmless error doctrine." Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65,

67 (4th Cir. 2014) (per curiam). The harmless error doctrine prevents a remand when the ALJ's

decision is "overwhelmingly supported by the record though the agency's original opinion failed

to marshal that support" and a remand would be "a waste of time." Id. at 67 (quoting Spiva v.

Astrue, 628 F.3d 346, 353 (7th Cir. 2010)). It is clear that a remand to merely consider the CT

scan results from June 27, 2012, would be a futile exercise, as the CT scan results contain

nothing that the ALJ would be required to include in the RFC. Therefore, the ALJ's failure to

explicitly consider the CT scan from June 27, 2012, in her decision is not reversible error.

### B. The Evaluation of Dr. Carter's Opinions

Plaintiff argues that the ALJ erroneously evaluated the opinions of Dr. William Carter's

opinions. (Pl.'s Mem. Supp. at 7-12; Pl.'s Mem. Opp. & Reply at 2-4.) Specifically, Plaintiff

states that the ALJ failed in her evaluation of Dr. Carter's opinions in two ways. First, Plaintiff

claims that the ALJ failed to properly evaluate Dr. Carter's opinion that Plaintiff had

"intermittent functional limitations." (Pl.'s Mem. Supp. at 9; Pl.'s Mem Opp. & Reply at 2-3.)

Second, Plaintiff claims that the ALJ failed to evaluate whether Dr. Carter's opinions were

entitled to controlling weight as Plaintiff's treating physician, along with failing to otherwise

properly evaluate Dr. Carter's opinions for weight. (Pl.'s Mem. Supp. at 10-12.) In response, Defendant argues that the ALJ properly evaluated Dr. Carter's opinions and that such evaluations were supported by substantial evidence. (Def.'s Mem. Supp. & Opp'n at 23-26.)

As previously stated, an ALJ is required to consider all relevant medical evidence and other evidence in the case record in making the RFC assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Medical opinions are one type of evidence that an ALJ considers when determining a claimant's RFC. 20 C.F.R. §§ 404.1527(b), 416.927(b). In light of the ALJ's evaluation of Dr. Carter's opinions, two areas of argument are at issue in this case. First, there is a question as to whether the ALJ properly evaluated and considered Dr. Carter's opinion that Plaintiff had "intermittent functional limitations" and whether those "intermittent functional limitations" included the limitation to only work twenty hours a week. Second, there is a question as to whether the ALJ conducted the proper analysis and assigned the proper weight to Dr. Carter's opinions. The undersigned considers each issue in turn.

### 1. *Dr. Carter's Opinion on Plaintiff's "Intermittent Functional Limitations"*

Plaintiff asserts that the ALJ assigned great weight to Dr. Carter's opinion from January 2016 of Plaintiff having "intermittent functional limitations," which Plaintiff characterizes as Plaintiff being limited to work activities for only twenty hours per week, and yet that the ALJ failed to address those work-hour limitations in either her RFC assessment or her hypothetical questions to the vocational expert. (Pl.'s Mem. Supp. at 9; Pl.'s Mem. Opp. & Reply at 2.) In response, Defendant asserts that while the ALJ assigned great weight only to Dr. Carter's January 2016 opinion of Plaintiff having "intermittent functional limitations," those "intermittent functional limitations" do not include the specific finding that Plaintiff was limited to work activities for only twenty hours per week. (Def.'s Mem. Supp. & Opp. at 24-25.)

11

There is a lack of clarity with regards to what exactly what the aforementioned "intermittent functional limitations" as described by Dr. Carter include. Plaintiff asserts that the "intermittent functional limitations" stated by Dr. Carter include Plaintiff being limited to work activities for only twenty hours per week, while Defendant asserts that it does not. Indeed, the ALJ's evaluation of Dr. Carter's opinions was unclear. Dr. Carter's January 2016 opinion does explicitly state that, in his opinion, Plaintiff could only participate in employment and training activities for twenty hours a week. (R. at 1391.) However, when evaluating Dr. Carter's opinions as a whole, the ALJ stated in part:

> This [June 2016] opinion is not consistent with the doctor's report in January 2016 that the claimant experienced only intermittent functional limitations due to pain (Exhibits 39F and 40F). This [January 2016] report from the doctor appears to be more consistent with the record as a whole and this report of intermittent functional limitations is assigned great weight; however, the diagnoses of fibromyalgia that appears in the statement is rejected as the evidence does not contain the proper indicia of the impairment as required by the regulations (Exhibits 39F and 40F).

(Id. at 175 (brackets added for clarification).) Notably, the ALJ's evaluation only explicitly discounted Dr. Carter's diagnoses of fibromyalgia and was silent as to whether Dr. Carter's opinion that Plaintiff should be limited to working for only twenty hours per week was assigned great weight as part of Plaintiff's "intermittent functional limitations" or was discounted. Further, the ALJ determined an RFC for Plaintiff that did not address how many hours Plaintiff could work per week in her decision, nor did the ALJ ask the vocational expert questions that addressed how many hours Plaintiff could work per week. (Id. at 172, 200-02.)

The lack of clarity from the ALJ with regards to how many hours a week Plaintiff could work is troubling and frustrates meaningful review. The Fourth Circuit has been clear that an ALJ must provide a sufficient explanation of her findings to allow for meaningful appellate review, and that failure to do so is reversible error. See, e.g., Monroe v. Colvin, 826 F.3d 176,

188 (4th Cir. 2016) ("Because the ALJ never determined the extent to which [Plaintiff] actually experienced episodes of loss of consciousness and extreme fatigue, we cannot determine whether the hypothetical questions posed to the VE included all of [Plaintiff's] functional limitations."); Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015) ("Because we are left to guess about how the ALJ arrived at his conclusion on [Plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary."); Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." (citations omitted)). Because it is simply unclear how the ALJ weighed Dr. Carter's January 2016 opinion, the ALJ's decision has frustrated meaningful review. If the ALJ did indeed intend to give great weight to Dr. Carter's opinion that Plaintiff could only work twenty hours a week, then Plaintiff was entitled to have that limitation of twenty working hours a week addressed in some way in the ALJ's RFC assessment and perhaps even in questions to the vocational expert. If the ALJ intended to discount Dr. Carter's opinion that Plaintiff could only work twenty hours a week, then the decision should have provided a sufficiently understandable explanation as to why. Therefore, it is appropriate to remand the case for reconsideration of the evidence and for clarification of the evaluation of Dr. Carter's opinions.

## 2. *The Weight Assigned to Dr. Carter's Opinions*

Plaintiff asserts that the ALJ failed to clearly evaluate whether Dr. Carter's opinions should be entitled to controlling weight. (Pl.'s Mem. Supp. at 9-10; Pl.'s Mem. Opp. & Reply at 2-4.) Relatedly, Plaintiff also asserts that, apart from the required evaluation on controlling

weight, the ALJ failed to otherwise properly evaluate Dr. Carter's opinions. (Pl.'s Mem. Supp. at 10-11; Pl.'s Mem. Opp. & Reply at 2-4.) In response, Defendant asserts that the ALJ properly evaluated Dr. Carter's opinions and provided appropriate reasoning when doing so. (Def.'s Mem. Supp. & Opp. at 25-26.)

With regards to Dr. Carter's opinions being evaluated as the opinions of a treating source, specific rules do exist for the evaluation of treating sources' opinions. 20 C.F.R. §§ 404.1527(a)(2), (c)(2), 416.927(a)(2), (c)(2); S.S.R. 96-2p, 1996 WL 324188, at *1 (July 2, 1996).[2] Generally, opinions from treating sources are given more weight than other opinions, and if it is found that a treating source's opinion on the nature and severity of a claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it will be given "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Four requirements essentially exist for an opinion to be given controlling weight: (1) the opinion must come from a "treating source;"[3] (2) the opinion must be a "medical opinion," defined as an opinion about the nature and severity of the claimant's impairments; (3) the opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (4) the opinion must not

---

2. Effective in a final rule dated March 27, 2017, the Social Security Administration ("SSA") added 20 C.F.R. §§ 404.1520c and 416.920c, which address how the SSA considers medical opinions and eliminate special consideration for treating sources. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867-68, 5878-79 (Jan. 18, 2017). However, the final rule states that 20 C.F.R. §§ 404.1527 and 416.927 still apply to claims filed before March 27, 2017. Id. at 5844. Plaintiff filed her claim on July 1, 2013, meaning that 20 C.F.R. §§ 404.1527 and 416.927, as well S.S.R. 96-2p, which provides explanation of the treating source rules in 20 C.F.R. §§ 404.1527 and 416.927, still apply to Plaintiff's case.

3. A treating source, as defined by the now-revised Social Security regulations that apply to Plaintiff's case, is an acceptable medical source that has provided a claimant with treatment in an ongoing treatment relationship. See 20 C.F.R. §§ 404.1502, 416.902 (2016), revised by 82 Fed. Reg. at 5863-64, 5873-74.

be inconsistent with the other substantial evidence in the record. S.S.R. 96-2p, 1996 WL 324188, at *2. If an opinion does not meet the aforementioned four requirements, it cannot be given controlling weight. Id.

If an opinion is not given controlling weight as a treating source's opinion, the Social Security regulations require that certain factors be considered to determine the weight given to the medical opinion, as required of all other medical opinions: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); S.S.R. 96-2p, 1996 WL 324188, at *4. An ALJ is not required to explicitly analyze each of the aforementioned factors if the ALJ is clear in her conclusions as to which factor resulted in less weight for the opinion at question, so long as the ALJ is clear as to which factor has justified her conclusion. Bishop, 583 F. App'x at 67 ("While the ALJ did not explicitly analyze each of the … factors on the record, the ALJ was clear that he concluded that the doctor's opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons.").

In this case, the ALJ assigned little weight to Dr. Carter's June 2016 opinion, citing its inconsistency with Dr. Carter's own progress notes and the objective medical evidence as a whole. (R. at 175.) While it is possible that Dr. Carter could have been qualified as a "treating source," by citing inconsistencies in her conclusions on Dr. Carter's opinions, it is clear that the ALJ conducted the appropriate opinion evaluation analysis, and appropriately determined to give less than controlling weight to Dr. Carter's June 2016 opinion. See Bishop, 583 F. App'x at 67. However, once again, the ALJ's aforementioned lack of clarity as to how exactly she weighed Dr. Carter's January 2016 opinion, particularly the statement that Plaintiff could only work

15

twenty hours a week, results in the ALJ's decision containing reversible error. The ALJ's silence as to what weight to give Dr. Carter's statement that Plaintiff could only work twenty hours a week once again frustrates meaningful review, as the Court is "left to guess about how the ALJ arrived at [her] conclusion" regarding what weight the ALJ assigned Dr. Carter's January 2016 opinion. See Mascio, 780 F.3d at 637. In light of the ALJ assigning different levels of weight to different portions of Dr. Carter's opinion, it appears feasible that the ALJ could have assigned controlling weight as a treating source's opinion to the portion of Dr. Carter's opinion that Plaintiff could only work twenty hours a week, if the ALJ had found that portion of Dr. Carter's analysis to meet the four necessary requirements. On the other hand, the ALJ could have assigned it some other level of weight. However, as stated, the ALJ failed to address the limitation of working only twenty hours a week at all. Therefore, it is appropriate to remand the case for the ALJ to reconsider the evidence of record and explicitly state what type of weight to assign Dr. Carter's determination in his January 2016 opinion that Plaintiff could only work twenty hours a week.

### C. Evidence Presented to the Appeals Council

Plaintiff argues that the Appeals Council erroneously failed to consider a neuropsychological evaluation dated November 10, 2016 that was presented by Plaintiff to the Appeals Council during the pendency of her appeal of the ALJ's decision. (Pl.'s Mem. Supp. at 13-15; Pl.'s Mem. Opp. & Reply at 5-6.) Plaintiff contends that the neuropsychological evaluation demonstrated that Plaintiff's level of functioning was impaired with regards to attention, concentration, cognitive processing, learning, and memory, and therefore displayed a reasonable probability to change the outcome of the ALJ's decision. (Pl.'s Mem. Supp. at 14; Pl.'s Mem. Opp. & Reply at 5-6.) Despite submitting more than a hundred pages of other

16

medical records to the Appeals Council, Plaintiff has notably limited her appeal to only the Appeals Council's decision to not to consider the seven-page neuropsychological evaluation dated November 10, 2016. In response, Defendant argues that Appeals Council acted properly in not considering the neuropsychological evaluation dated November 10, 2016, as it determined that the neuropsychological evaluation did not display a reasonable probability to change the outcome of the ALJ's decision. (Def.'s Mem. Supp. & Opp'n at 26-27.)

The Appeals Council must consider only "new and material evidence" that "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b) (2016).[4] In determining new and material evidence, "[e]vidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011) (quoting Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc)). When the Appeals Council fails to consider new and material evidence, then the reviewing court "must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Wilkins, 953 F.2d at 96. However, if the evidence is not new and material, then the Appeals Council is not required to consider the evidence and remand is not warranted. 42 U.S.C. § 405(g); Smith v. Chater, 99 F.3d

_____

4. Effective January 17, 2017, the Social Security Administration ("SSA") revised 20 C.F.R. §§ 404.970 and 416.1470 in a final rule, which addressed when the Appeals Council must review a case in light of a claimant submitting additional evidence. See Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90,987, 90,994, 90,996 (Dec. 16, 2016). Plaintiff filed her claim on July 1, 2013, and requested review of the ALJ's decision on October 21, 2016, both before the revised versions of 20 C.F.R. §§ 404.970 and 416.1470 took effect. (R. at 354, 405-07.) The SSA does not have the power to engage in retroactive rulemaking. Compare Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules to agencies), with 42 U.S.C. 405(a) (granting the SSA rulemaking power, but not expressly granting retroactive rulemaking power). Therefore, the versions of 20 C.F.R. §§ 404.970 and 416.1470 in effect before January 17, 2017, apply to Plaintiff's claim.

635, 638 n.5 (4th Cir. 1996).

In this case, Plaintiff submitted a neuropsychological evaluation dated November 10, 2016, to the Appeals Council for consideration. (R. at 139-47.) The ALJ did not have the neuropsychological evaluation before her, and the Appeals Council concluded that neuropsychological evaluation did "not show a reasonable probability that it would change the outcome of the decision" and so the Appeals Council "did not consider and exhibit" the neuropsychological evaluation. (Id. at 2.) Therefore, in this case, the Court must first determine whether the evidence Plaintiff submitted to the Appeals Council was new, material, and related to the period on or before the date of the administrative law judge hearing decision. If so, then the Court must review the record as a whole, including the evidence Plaintiff submitted to the Appeals Council, and determine whether substantial evidence supports Defendant's final decision. See Wilkins, 953 F.2d at 96. If not, then the Appeals Council did not act improperly and a remand to consider the neuropsychological evaluation is not warranted. See 42 U.S.C. § 405(g); Smith, 99 F.3d at 638 n.5. Accordingly, it is appropriate to review both the neuropsychological evaluation and ALJ's decision with regards to Plaintiff's mental impairments and resultant functional limitations.

Dated November 10, 2016, the neuropsychological evaluation's purpose was to evaluate the cognitive functioning of Plaintiff. (R. at 139.) The evaluation noted the Plaintiff reported having difficulties with her memory, reading, and recalling information beginning in 2012. (Id.) The evaluation noted that Plaintiff specifically reported having difficulty recalling conversations and recent events, misplacing items, repeating herself, being unable to recognize or remember certain people, having difficulties with attention and concentration, being easily distracted, having word-finding problems, losing her train of thought, having difficulty with reading

comprehension, having trouble recalling what she has read, having diminished handwriting and spelling, and having poor balance. (Id.) The evaluation detailed Plaintiff's self-reported psychiatric history, noting that Plaintiff reported taking medication for depression in 2000 or 2002, having a mood as "back and forth," "tired, but not happy," and irritable, having a "so-so" appetite, having trouble falling and staying asleep for more than four hours per night, having a poor energy level, having a diminished interest in and motivation to engage in activities, and having weekly crying spells, but not having suicidal ideation or hallucinations. (Id. at 140.) The evaluation also detailed Plaintiff's self-reported social history, noting that Plaintiff reported being a high school graduate without a history of learning problems, having attended college for a few years but not earning a degree, previously working as a nursing aid but quitting due to being unable to work in light of medications she was taking, having past work experience as a waitress and in the fast-food industry, not currently working, being able to drive but having some difficulty doing so due to being startled by close-by cars, having to be cautious when driving, needing to plan a driving route with a map, managing her own finances, receiving some financial assistance from the U.S. Department of Housing and Urban Development and her daughters, being able to cook but sometimes leaving food unattended, not keeping up with household chores as she has in the past, being able to complete grooming and self-care activities, enjoying swimming, visiting friends on the Internet, texting, and walking. (Id. at 140-41.) For behavioral observations, the evaluation noted that Plaintiff presented as well nourished, casually dressed, and well groomed, that Plaintiff was alert and attentive with appropriate affect, that Plaintiff had spontaneous speech with a pressured quality that caused her words to run together, that Plaintiff often contradicted herself when reporting her history and appeared somewhat nervous, that Plaintiff did not appear to have difficulty understanding test instructions, that Plaintiff was

pleasant and cooperative, and that Plaintiff appeared to demonstrate good effort during the evaluation. (Id. at 141.) The evaluation provides the results of various tests: for baseline intellectual abilities, Plaintiff was established to be in average range; for performance validity, Plaintiff was within normal limits; for mental status, Plaintiff was well below expectation; for attention, concentration, and cognitive processing speed, Plaintiff was in the impaired range; for language, Plaintiff was in the average range; for visuospatial abilities, Plaintiff was in the below average range; for learning and memory, Plaintiff was in the impaired range; for problem solving, Plaintiff was within normal limits; for mood, Plaintiff was in the range for moderate to severe degree of depression. (Id. at 141-44.)

Ultimately, in its summary and recommendations, the neuropsychological evaluation suggested that while was of average baseline intellectual abilities, the test results were difficult to draw conclusions from. (Id. at 145.) On one hand, the evaluation stated that if the test results were accurate, Plaintiff would have had significant difficulty in the workplace, would have had a hard time learning new job information and tasks, and would have required significant supervision and redirection. (Id.) Further, if accurate, the test results would have also indicated that Plaintiff would have had difficulty living independently, managing her own finances, managing her own medications, and driving. (Id.) On the other hand, the evaluation noted that the test results conflicted with Plaintiff's own reports of intact daily functioning and no difficulty with daily activities. (Id.) The evaluation hypothesized that psychological distress, pain, or medication effects could have contributed to poor test performance while not actually impacting her daily functioning. (Id.)

With regards to the ALJ's decision, the ALJ explicitly considered Plaintiff's mental impairments in two places. The ALJ examined evidence of Plaintiff's mental impairments at step

two of the sequential analysis when determining whether Plaintiff had a medically determinable impairment that was severe or a combination of impairments that was severe. (Id. at 170-71.) The ALJ considered the four broad functional areas of activities of daily living, social functioning, concentration, persistence, or pace, and decompensation. (Id.) For activities of daily living, the ALJ determined that Plaintiff's mental impairments caused a mild limitation, as Plaintiff reported that she could care for herself, live independently, travel independently, and manage her own finances, Plaintiff's reports were supported by state agency consultants and other medical sources. (Id. at 170.) For social functioning, the ALJ determined that Plaintiff's mental impairments caused a mild limitation, as Plaintiff reported spending time talking to and visiting others and going out in public, and Plaintiff's reports were supported by state agency consultants and other medical sources. (Id. at 170-71.) For concentration, persistence, or pace, the ALJ determined that Plaintiff's mental impairments caused a mild limitation, as Plaintiff reported being able to manager her own financial and household tasks, and Plaintiff's reports were supported by state agency consultants and other medical sources. (Id. at 171.) For decompensation, the ALJ determined that Plaintiff's mental impairments caused no limitation, as Plaintiff had no reports or evidence of decompensation such as suicidal or homicidal ideation, hallucinations, delusions, or psychosis. (Id.) Ultimately, the ALJ concluded that Plaintiff's mental impairments were non-severe medically determinable impairments. (Id.) The ALJ again considered Plaintiff's mental impairments between steps four and five of the sequential evaluation when determining Plaintiff's RFC, as the ALJ considered the functional limitations resulting from Plaintiff's non-severe mental impairments. (Id. at 174-76.) The ALJ noted that in light of Plaintiff's mental impairments, Plaintiff had minimal functional limitations evidenced by her activities of daily living, as Plaintiff lived in an apartment alone, took care of her own

21

personal and grooming needs, cooked regularly, performed household chores, used public transportation, paid bills, managed financial accounts, used the computer, and spent time with family. (Id. at 174.) The ALJ noted that Plaintiff's alleged mental impairment symptoms and limitations were not consistent with her activities of daily living and supported, with other evidence, the conclusion that Plaintiff was capable of a reduced range of light work. (Id. at 174, 176.)

Upon considering the contents of the neuropsychological evaluation and the ALJ's decision on Plaintiff's mental impairments, it is clear that, while new, the neuropsychological evaluation is not material. The evaluation is new because it is not "duplicative or cumulative," as the evaluation sets out and explains an entire host of test results that had not otherwise been available in the previous evidence of record. See Meyer, 662 F.3d at 705 (quoting Wilkins, 953 F.2d at 96). However, the evaluation and its test results are not material. To reiterate, to be material, the evaluation must provide the basis for "a reasonable possibility that [it] would have changed the outcome" of the ALJ's decision. Id. (quoting Wilkins, 953 F.2d at 96). In this case, the ALJ concluded that Plaintiff's medically determinable mental impairments caused her no more than mild functional limitations and that, when combined with other evidence, resulted in a RFC to complete a reduced range of light work. (R. at 170-76.) The evaluation cannot provide a basis to change the ALJ's outcome on these determinations, as its ultimate conclusions cast significant doubt on the test results accurately reflect Plaintiff's actual functional limitations resulting from her mental impairments. The evaluation itself described the results as "somewhat inconsistent," "difficult to interpret," and "puzzling" when compared to Plaintiff's reported functional activities. (R. at 145.) As a result, the neuropsychological evaluation essentially provides no definitive information on Plaintiff's actual functional limitations, and so the

22

evaluation's failure to provide clear, interpretable results do not generate a reasonable possibility that consideration of the evaluation would alter the outcome of the ALJ's decision. See Garrett v. Sullivan, 972 F.2d 339, 1992 WL 188142, at *1 (4th Cir. 1992) (per curium) (unpublished table opinion) (finding "unhelpful" evidence to be "non-material"). Therefore, the Appeals Council did not act improperly in not considering the neuropsychological evaluation and a remand is not appropriate.

### D. Due Process of Law at the ALJ Hearing

Plaintiff argues that the ALJ deprived her of due process of law by failing to follow the Social Security Administration's Hearings, Appeals and Litigation Law Manual ("HALLEX") I-2-3-20 and I-2-4-25. (Pl.'s Mem. Supp. at 15-17.)[5] Specifically, Plaintiff alleges that HALLEX I-2-4-25 requires an ALJ to follow certain procedures in finding that a claimant constructively waived a right to appear, and that the ALJ's failure to do so amounted to a violation of due process of law that requires a remand to the ALJ for another hearing. (Id.) In response, Defendant argues that the ALJ properly followed HALLEX I-2-4-25 in light of Plaintiff not appearing for her hearing, and that even if the ALJ did not follow the HALLEX, noncompliance with HALLEX procedures does not amount to a violation of Plaintiff's right to due process of law to justify a remand for another hearing. (Def.'s Mem. Supp. & Opp'n at 28-30.)

Due to the undersigned recommending remand of Plaintiff's case for other reasons, it is unnecessary to address whether the ALJ did or did not comply with the HALLEX. It is further unnecessary to address whether noncompliance with HALLEX procedures justifies a remand, particularly in light of the unclear legal implications of noncompliance with the HALLEX.

---

5. The HALLEX is the SSA's agency manual that conveys guiding principles, procedural guidance, and information to the Office of Hearings and Appeals (OHA) staff for processing and adjudicating claims. See HALLEX § 1–1–0–1, 2005 WL 1863821, at *1 (June 21, 2005).

Compare Bordes v. Comm'r of Soc. Sec., 235 F. App'x 853, 859 (3d Cir. 2007) (holding that the HALLEX does not have the force and effect of law, and so allegations of noncompliance with HALLEX are not to be reviewed), and Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (same), with Newton v. Apfel, 209 F.3d 448, 459 (5th Cir. 2000) (holding that noncompliance with the HALLEX can result in a remand to the ALJ when prejudice results from the noncompliance). Accordingly, Plaintiff's argument that the ALJ deprived her of due process of law will not be addressed, as it is recommended that Plaintiff receive a new administrative hearing regardless as to whether the ALJ had complied with the HALLEX or not.

### E. Remand for a New Administrative Hearing

Plaintiff has asserted that the decision of Defendant should be summarily reversed, or in the alternative, remanded to the SSA for a new administrative hearing. (Pl.'s Mot. Summ. J. at 1; Pl.'s Mem. Supp. at 1, 17; Pl.'s Mem. Opp. & Reply at 7.) When a "reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Radford, 734 F.3d at 295 (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)). Accordingly, a remand to the SSA, not a summary reversal that awards benefits to Plaintiff, is appropriate. The remand should include the SSA providing Plaintiff the opportunity to appear at a new administrative hearing before an ALJ. A new administrative hearing is appropriate to not only fully address the opinions of Dr. Carter, which the ALJ failed to clearly and sufficiently evaluate, but also to address other evidence implicated by the opinions of Dr. Carter that was not otherwise addressed in this Report and Recommendation.

### V. RECOMMENDATION

For the reasons set forth, the undersigned U.S. Magistrate Judge recommends that

24

Plaintiff's Motion for Summary Judgment (Dkt. 10) be GRANTED IN PART insofar as it seeks a remand of Plaintiff's case, that Defendant's Motion for Summary Judgment (Dkt. 13) be DENIED, and that the final decision of Defendant be VACATED and REMANDED for proceedings consistent with this Report and Recommendation.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to

28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within

fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives

appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of

record.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

June 19th, 2018
Alexandria, Virginia

26